United States District Court
Southern District of Texas
**ENTERED**
September 07, 2018
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ARTHUR ALEXANDER OFFICE, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. H-17-2346 |
| | § | |
| LORIE DAVIS, | § | |
| Director of the Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court are Petitioner Alexander Office's Motion for Summary Judgment (D.E. 9[1]), Amended Motion for Summary Judgment (D.E. 12), Second Amended Motion for Summary Judgment (D.E. 18), Respondent Lorie Davis's Motion for Summary Judgment (D.E. 21), and Office's Amended Reply Brief and Request for Equitable Tolling (D.E. 26). Petitioner Office filed his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, which has been referred to this magistrate judge for report and recommendation. For the following reasons, the court recommends Respondent's Motion for Summary Judgment be granted, that Office's Motions for Summary Judgment be denied, and that Office's Petition be denied with prejudice.

---

[1] Throughout this document, "D.E." refers to the ECF docket entry number.

## I.  BACKGROUND

On August 4, 2008, Petitioner Arthur Alexander Office pleaded guilty in the 268th district court of Fort Bend County, Texas to aggravated assault causing serious bodily injury. (D.E. 22-2 at 13–14.) Office's wife, Erika Office, was the victim. The court deferred adjudication of guilt and placed Office on probation for four years. (D.E. 22-2 at 13–14.) On August 8, 2011, the court extended the probation term by two years, and Office waived the hearing. (D.E. 22-2 at 36–37.)

On August 16, 2013, the State of Texas filed a motion to adjudicate guilt, alleging that Office assaulted his wife and attempted to solicit her murder. (D.E. 22-2 at 49–50.) On March 7, 2014, the state trial court held a probation revocation hearing. The prosecution alleged that Office beat Erika Office for more than five hours, and later, solicited her murder through his barber. Erika Office testified about the assault. She said Office used knife to threaten her and beat her for more than five hours. (D.E. 22-4 at 59.) The prosecution called Office's probation officer, the police officers who investigated the 2013 incident, and Office's barber whom Office allegedly hired to murder Erika Office. Office's defense counsel, Mr. Williams, cross-examined the state's witnesses and argued that Office merely acted in self-defense after Erika Office lunged at Office with a knife. (D.E. 22-9 at 8.) Mr. Williams called into question the credibility of the police report that alleged use of a knife, based on the fact that another police report completed a few days

before did not mention it. (D.E. 22-8 at 58, 60.) To prove that Office hired his barber for Erika Office's murder, the prosecutor attempted to introduce into evidence some text messages Erika Office received from an unknown number, but the trial court declined to admit them into evidence. (D.E. 22-5 at 34.) The court eventually dismissed the solicitation of murder charge but found that Office violated his probation terms by assaulting his wife. (D.E. 22-2 at 52.) The court sentenced Office to seven years in the Texas Department of Criminal Justice—Correctional Institutions Division. (D.E. 22-2 at 52.)

Office timely appealed, and the Texas First Court of Appeals affirmed the conviction. *See Office v. State*, No. 01-14-00260-CR, 2015 WL 5450961, at *1 (Tex. App.—Houston [1st Dist.] 2015, *pet. ref'd*). The Texas Court of Criminal Appeals (TCCA) refused Office's petition for discretionary review. *See id.*

TCCA denied Office's first state application for writ of habeas corpus on May 18, 2016, because his direct appeal was still pending at the time he filed the application. *See In re Office*, No. WR-84-947-01 (D.E. 23-14). Office filed a second state habeas application on May 31, 2016, (D.E. 23-21 at 34) and a supplemental application on August 1, 2016. (D.E. 23-22 at 12.) On November 28, 2016, the state trial court recommended denial of the application, based on the

court's Findings of Fact and Conclusions of Law, Recommendation and Order.[2] (D.E. 23-24 at 48–56.) On January 11, 2017, TCCA denied the writ "without written order on the findings of trial court without hearing." *See In re Office*, WR-84-947-02 (D.E. 23-19).

Office filed the present federal habeas petition under 28 U.S.C. §2254 on July 31, 2017. (D.E. 1.) Office raises eleven grounds for relief in his petition, each containing multiple sub-grounds. In summary, Office claims that his 2008 guilty plea was involuntary, that the district attorney committed prosecutorial misconduct, that his trial counsel had an actual conflict of interest, that Office received ineffective assistance of trial and appellate counsel, that the trial court abused its discretion by admitting certain evidence, and that the decision of the First Court of Appeals was unconstitutional. Respondent Davis moved for summary judgment and argued that Office's claims are time-barred, procedurally defaulted, or meritless.

## II. STANDARD OF REVIEW

Office's federal habeas petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA). Section 2254 sets forth a highly deferential standard for review. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). The state court's factual determinations are

---

[2] The trial court based its factual findings on the court's own recollections and affidavits submitted by Office's trial and appellate counsel.

presumed correct, and a habeas petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption applies to state courts' explicit findings of fact as well as to "unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez*, 274 F.3d at 948 n. 11. A petitioner cannot obtain federal habeas corpus relief with respect to any claim that was adjudicated on the merits in state court unless the adjudication of the claim resulted in:

> (1) a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or

> (2) A decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

### III.   ANALYSIS

### A. 2008 Guilty Plea

Office claims that his 2008 guilty plea was involuntary. According to Office, his trial counsel, Mr. Cornell Williams, "coerced" Office into entering a guilty plea, despite Office's innocence.[3] (D.E. 1 at 5–6; D.E. 1-1 at 4–11.) Office claims that the 2008 incident arose out of self-defense, and he would have prevailed if he went to trial. (D.E. R. 1 at 5–6; D.E. 1-1 at 4–11.)

---

[3] Office also contends that Mr. Williams failed to persuade the district attorney to drop the charges. That assertion is irrelevant to the voluntariness of the guilty plea.

### 1.   Office's claim is time-barred.

Davis argues that any claim pertaining to the 2008 guilty plea is time-barred

under the AEDPA statute of limitations. (D.E. 21 at 6–8.) AEDPA section

2244(d)(1) sets a one-year statute of limitations that runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2254(d)(1).

Davis argues that under subsection (A) of section 2254(d)(1), the statute of

limitations expired on September 3, 2009, when Office's deferred adjudication

judgment became final. (D.E. 21 at 6–8.)  In turn, Office argues that the statute of

limitations on this claim should run from May 3, 2016, the day when the state court

issued its mandate, enabling him to apply for a habeas relief. (D.E. 26 at 3.)

Office did not challenge his 2008 guilty plea until he violated his probation

term in 2013.  The court agrees with Respondent that section 2254(d)(1)(A)

controls in this case,[4] and that Office's judgment became final on September 3, 2008. An order of deferred adjudication is a "judgment." *Caldwell v. Dretke*, 429 F.3d 521, 528 (5th Cir. 2005). Here, Office was placed on deferred adjudication on August 4, 2008. (D.E. 22-2 at 13–14.) Under Texas law, Office's plea of guilty became final on September 3, 2008. Tex. R. App. Proc. 26.2(a)(1) (notice of appeal must be filed within 30 days after the sentence is imposed or suspended). Office did not appeal the deferred adjudication order. Therefore, any claims about the validity of the 2008 judgment were time-barred as of September 3, 2009, one year from the point when Office's plea of guilty became final. *See* 28 U.S.C. §2254(d)(1)(A).

## 2.   Equitable tolling does not apply.

Office argues in the alternative that this court should equitably toll the statute of limitation because he "had never heard of ineffective assistance of counsel" claim until he was federally indicted. (D.E. 26 at 5.) Equitable tolling is a discretionary doctrine that a district court may employ to allow an untimely habeas petition to proceed "in extraordinary circumstances." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). The doctrine is principally applicable "where the plaintiff is actively misled by the defendant about the cause of action or is prevented in

---

[4] Subsections (B), (C), and (D) do not apply here because Office failed to show that the state created an impediment to filing his habeas claim, that a new constitutional right is applicable, or that there was a factual predicate he could not have discovered with due diligence.

some extraordinary way from asserting his rights." *Grooms v. Johnson*, 208 F. 3d 488, 489–90 (5th Cir. 1999). AEDPA section 2254(d) is subject to equitable tolling. *Holland v. Fla.*, 560 U.S. 631, 645 (2010) (AEPDA statute of limitations defense is not jurisdictional).

Here, Office claims that he could not have contested his 2008 guilty plea before the statute of limitations expired because Office was not aware that he could raise a claim of ineffective assistance of counsel. (D.E. 26 at 5.) However, mistake of law that is within a party's control does not constitute the "rare and exceptional circumstance" for which this court can equitably toll the statute of limitations. *See Menominee Indian Tribe of Wisconsin v. United States*, 136 S. Ct. 750, 756 (2016) (holding that a mistake of law was not outside a party's control was not extraordinary circumstance that justifies equitable tolling); *see also Wion v. Quarterman*, 567 F.3d 146, 149 (5th Cir. 2009) (denying equitable tolling on a habeas petition where an attorney made a mistake of law regarding statute of limitations). Office failed to show any evidence that he was actively misled or was prevented from asserting his rights in an unusual manner. *See Grooms*, 208 F. 3d at 489–90 (5th Cir. 1999) (finding no exceptional circumstances meriting equitable tolling where a habeas petitioner argued that he could not pursue state remedies during the pendency of his first federal habeas proceeding but was not actively misled). Therefore, this court declines apply equitable tolling to Office's claim.

### 3.   The claim is meritless

In any case, Office's claim is meritless. In the context of a guilty plea, a habeas petitioner alleging a *Strickland* claim must show that "there is a reasonable probability that, but for the counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *King v. Davis*, 898 F.3d 600, 603 (5th Cir. 2018) (holding that the petitioner failed to show a *Strickland* claim in alleging that his trial counsel mistakenly advised him that he was eligible for a community supervision when he was not).

Here, the state habeas court found that Office "knowingly and voluntarily pled guilty," (D.E. 23-24 at 49, ¶ 5) "has failed to overcome the presumption that his plea was regular," (D.E. 23-24 at 54,  ¶¶ 1, 3), and that Mr. Williams "rendered reasonably effective assistance of counsel." (D.E. 23-24 at 54, ¶ 5.) Office offers a mere conclusory allegation that he would have prevailed at trial. He has not shown that taking a plea offer to probation was not a rational alternative to trial. The trial court's decision was based on a reasonable determination of the facts. And Office points to no legal authority to suggest that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law.

### B. Prosecutorial Misconduct

Office argues that the district attorney violated his general due process rights by committing prosecutorial misconduct. Office alleges that it was unconstitutional

for the prosecutor to (1) not give him notice of the prosecution's intent to use prior convictions, (2) refer to past motions to adjudicate guilt at opening argument, (3) allow Erika Office to testify to documents not introduced as evidence, (4) allow Erika Office to testify that Office has sold drugs in the past and carried burner phones, and (5) make inflammatory remarks at closing argument. (D.E. 1 at 16–17; D.E. 1-2 at 9–16.[5])

This court reviews prosecutorial misconduct claims in a federal habeas petition to determine whether the alleged misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). The prosecution violates a defendant's due process rights only when the claimed misconduct is "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 483 U.S. 756, 765 (2010) (internal quotations omitted). The standard of review for a federal habeas court is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S. at 181; *Barrientes*, 221 F.3d at 753.

---

[5] Office raised these claims in his second state habeas application for the first time (D.E. 23-21 at 56–57). The state habeas court denied relief without explanation, other than concluding that "record claims," a claim that could have been raised and resolved during a habeas applicant's direct appeal, "will not be reviewed for the first time on writ of habeas corpus." (D.E. 23-24 at 55, ¶ 7.) The court also noted that "even a constitutional claim is forfeited if the applicant had the opportunity to raise the issue on appeal." (D.E. 23-24 at 55, ¶ 8.)

Office fails to show any misconduct at all and certainly no deprivation of his right to due process.

### 1. Office's Criminal history was admissible at the revocation hearing.

Office contends that the prosecution improperly introduced evidence of his criminal history, which consists of a 2002 assault conviction, a DWI conviction, and a prior arrest for trafficking cocaine. However, there is no constitutional right to exclude a defendant's criminal history in a probation revocation hearing. The Constitution protects a probationer or a parolee's basic rights—e.g., notice of the charge and a limited right to confront adverse witnesses—but not necessarily all of the other rights that a defendant in a non-revocation criminal proceeding may hold. *See Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) ("We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense."); *see also Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding that probationers at a probation revocation hearing have the same limited rights of a parolee in a parole revocation hearing specified in *Morrissey v. Brewer*). The court notes that in federal probation and supervised release revocation hearings, the seriousness of a probationer's criminal history is almost always considered to determine the final sentencing.

In Texas, a probation revocation hearing is a continuation of the original sentencing hearing. *Cobb v. State*, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993)

(en banc). It is standard practice for Texas courts to consider a defendant's criminal history in probation revocation hearings. *See, e.g., Landry v. State*, Nos. 09-13-00501-CR; 09-13-00502-CR, 2014 WL 4724430, at *4 (Tex. App.— Beaumont 2014) (noting the court considered at a hearing to revoke deferred adjudication community supervision the probationer's "extensive criminal history and continued criminal behavior while on probation" as aggravating factors); *see also Lambert v. State*, No. 03-17-00538-CR, 2018 WL 988778, at *3 (Tex. App.— Austin 2018) (considering the defendant's repeated criminal history as aggravating factor in a revocation hearing) *and Berwick v. State*, No. 09-13-00516-CR, 2014 WL 4724437, at *2 (Tex. App.—Beaumont 2014) (same).

Moreover, a judge, as the trier of fact, is presumed to have fairly considered all of the evidence. *See Harryman v. Estelle*, 597 F.2d 927, 929 (5th Cir. 1979), *on reh'g*, 616 F.2d 870 (5th Cir. 1980). In a probation revocation hearing, the judge is the sole trier of facts and determines the credibility of the witnesses and the weight given to their testimony. *Hammack v. State*, 466 S.W.3d 302, 304 (Tex. App.— Texarkana, 2015).

### a. The 2002 assault conviction was admissible.

Office argues that the prosecution violated his due process rights when the prosecutor mentioned Office's 2002 assault conviction in her opening statement.

(D.E. 1 at 16; D.E. 1-2 at 9.) He argues that the 2002 assault conviction was extraneous to the probation revocation. (D.E. 1 at 16; D.E. 1-2 at 10–11.)

In any event, Office's 2002 assault of Erika Office was the beginning of a series of assaults continuing in 2008, and again in 2013. (D.E. 22-2 at 46–47.) Nothing in state, federal, or constitutional law barred the prosecution from offering, and the court from considering, Office's repeated violation of the law as an aggravating factor in his revocation hearing. *See Cobb*, 851 S.W.2d at 874 (state law); *see also United States v. Warren*, 720 F.3d 321, 329 (5th Cir. 2013) (federal law) *and Scarpelli*, 411 U.S. at 782 (constitutional law).

Office's 2002 assault conviction was already before the trial court, and Office had notice that it would be introduced. The prosecution included the 2002 conviction in its motion to adjudicate guilt, which was served on Office. (D.E. 22-2 at 46–47.) The prosecutor did not commit misconduct because the 2002 conviction was admissible, and Office had notice that it can be used against him at the hearing. It follows that Office's due process rights were not violated.

### b. Arrest in Florida was admissible or not prejudicial.

Office contends that the prosecution's introduction of his prior arrest in Florida for trafficking cocaine was prejudicial and violated his right to a fair trial. (D.E. 1 at 16; D.E. 1-2 at 12.) According to Office, the prosecution willfully violated the Texas Rules of Evidence in doing so. (D.E. 1-2 at 10, 12.)

Office cannot show that its admission rendered the proceeding unfair. Again, there is no constitutional right for a probationer to exclude his criminal history at a revocation hearing. When, as here, the judge is the sole trier of fact, it is presumed that the court has fairly balanced the weight of all evidence. *See Harryman*, 597 F.2d at 929.

Moreover, Office's arrest was introduced in the context of the prosecutor clarifying Office's response that could leave a false implication. Office testified that he has never used a burner phone and was never arrested for anything involving drugs. (D.E. 22-9 at 51.) It was then that the prosecution questioned Office about his prior arrest in Florida for trafficking cocaine. (D.E. 22-9 at 51.) This was not misconduct, and it certainly does not implicate any due process concerns.

### c. DWI conviction was admissible.

Similarly, Office's claim that the prosecution improperly cross-examined him about his prior DWI conviction fails. Office argues that the prosecution questioned Office and Office's probation officer about the DWI conviction, in violation of his due process rights. (D.E. 1-2 at 20.)

This was done to correct the false impression that Office's testimony left. Office testified that he "did what [he] was supposed to do on probation" and "controlled [his] own behavior," implying that the 2013 incident was Erika

Office's fault. (D.E. 22-9 at 52–53.) It was then that the prosecution asked him about the DWI conviction. (D.E. 22-9 at 53.) Separately, Office's probation officer had testified that Office was arrested for DWI in 2009, in violation of his probation terms. (D.E. 22-8 at 89.) The probation officer also testified that Office did not alert the probation office about his arrest. (D.E. 22-8 at 90.)

This record suggests that the prosecution brought up the DWI conviction to impeach Office's testimony that he controlled his behavior while he was on probation. It was reasonable for the prosecution to clarify Office's statement. Also, as already discussed, introduction of Office's other misconduct while on probation is admissible, so it cannot be misconduct to offer it.

### 2. The motions to adjudicate guilt were part of the court record.

Next, Office challenges the prosecution's statement that the state had filed five motions to adjudicate guilt from the time Office had been placed on deferred adjudication. (D.E. 1 at 16; D.E. 1-2 at 11.) Office suggests that any discussion of the past motions were beyond the scope of the hearing and the prosecution should not have mentioned them. (D.E. 1-2 at 11.) Those motions were in the trial court's file, and Office offers no explanation of how discussing the filings on the court's docket could possibly be misconduct or render his hearing constitutionally unfair.

### 3. Office's past assault on his son was admissible.

Office argues that the prosecution improperly introduced evidence about Office's assault on his son during the redirect examination of Officer Hawkins, the first responder who found Erika Office badly injured after the 2013 incident. (D.E. 1 at 16; D.E. 1-2 at 3–4.) He claims that because the grand jury acquitted him, the incident is improper character evidence and should not have been discussed at his probation revocation. (D.E. 1 at 16; D.E. 1-2 at 3–4.)

Again, the prosecutor is permitted to clarify the witness's answers given on cross-examination. *See Rogers v. State*, 815 S.W.2d 811, 816 (Tex. App—Amarillo, 1991). On cross-examination, defense counsel asked Officer Hawkins if he had seen Erika Office before. (D.E. 22-4 at 40.) Officer Hawkins answered that he had. (D.E. 22-4 at 41.) But the defense counsel did not pursue further and abruptly changed the topic. (D.E. 22-4 at 41.) It was after this interaction that the prosecution asked how Officer Hawkins knew Erika Office. (D.E. 22-4 at 43.) In response, Officer Hawkins testified that he was called on to the scene as a first responder when Office struck Office's son with hot grease in 2012. (D.E. 22-4 at 43.) Office's misconduct while on probation was also relevant to the court's sentencing determination.

Based on this record, the prosecution did not commit misconduct by asking this follow-up question. Mr. Office has not shown any constitutional violation.

### 4. Erika Office's testimony about texts was not improper.

Office contends that the prosecution improperly allowed Erika Office to testify about text messages that were not admitted into evidence. (D.E. 1 at 16–17; D.E. 1-2 at 13–14.) The subject texts, in state exhibits 33–40, came from an unknown number and were offered to prove that Office solicited Erika Office's murder. (D.E. 1 at 16–17; D.E. 1-2 at 13–14.)

A prosecutor's attempt to introduce relevant evidence does not violate a defendant's rights, even if that evidence is eventually excluded from the record. The texts were not admitted, and the trial court did not consider them. (D.E. 22-5 at 34.) Thus, there was no misconduct. Office has not shown how the prosecutor's mere attempt to introduce evidence violated his due process rights.

### 5. Testimony about drug dealing and burner phone was relevant.

Office contends that the prosecution wrongfully elicited testimony from Erika Office about his history of dealing drugs and familiarity with using burner phones. (D.E. 1 at 18; D.E. 1-2 at 5.) Office argues that, in doing so, the prosecution violated Texas Rule of Evidence 404.

As a preliminary matter, federal courts reviewing a habeas petition do not exercise supervisory power over state court decisions. *See Darden*, 477 U.S. at 181; *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986) ("The federal courts will not review a state court's interpretation of its own law in a federal habeas corpus

proceeding."). And the federal court's review is limited to the violation of a petitioner's constitutional rights. *See* 28 U.S.C. § 2254; *Evans v. McCotter*, 790 F.2d 1232, 1238 n.6 (5th Cir. 1986) ("[T]he alleged error must violate the federal constitution or federal laws in order for the writ to be granted.").

As discussed above, it was not misconduct to introduce Office's history of dealing drugs. His criminal history is relevant to punishment. Use of a burner phone was part of the prosecutor's murder-for-hire case against Office. Because the state trial court ultimately dismissed the allegation that Office solicited murder, it appears that admission of that evidence was not prejudicial. (D.E. 22-9 at 78.)

Office has not shown any misconduct on the part of the prosecutor. He certainly has not shown that his hearing was so unfair as to violate his right to due process.

### 6. The prosecutor's closing argument was proper.

Office claims that it was unconstitutional for the prosecution to state that Erika Office became legally blind as a result of the injuries she sustained from Office's assault of Erika Office in 2008. (D.E. 1 at 17; D.E. 1-2 at 14–15.)

The revocation hearing was a continuation of the 2008 punishment hearing. *Cobb*, 851 S.W.2d at 874. There is no constitutional bar to introducing evidence of victim impact at the punishment phase. *See Payne v. Tennessee*, 501 U.S. 808, 821–25 (1991) (holding that victim impact evidence serves "entirely legitimate

purposes"; only unduly prejudicial evidence that renders the trial fundamentally unfair may violate the Due Process Clause of the Fourteenth Amendment). The prosecution acted well within its bounds to introduce evidence of Erica Office's injuries. It was not misconduct, and it did not render the hearing fundamentally unfair.

### C. Ineffective Assistance of Counsel—Trial Counsel

Office claims he received ineffective assistance from his trial counsel, Mr. Cornell Williams. (D.E. 1 at 6–16, 27–28.) Most of his claims overlap with his claims about prosecutorial misconduct. Office raised these claims in his state writ application, (D.E. 23-21 at 39–47), which the state court denied on the merits (D.E. 23-18 at 54 ¶¶ 37–45).

The Supreme Court has set forth a two-part test for analyzing ineffective assistance of counsel claims. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Under *Strickland*, the defendant must show that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defendant. *Id.* Performance is deficient when "counsel's representation [falls] below an objective standard of reasonableness." *Id.* Performance is objectively unreasonable when counsel commits errors "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" and guaranteed by the Sixth Amendment. *Id.* at 687. To show prejudice, a petitioner needs to show "a reasonable probability that, but for

19

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

### 1. No conflict of interest hindered trial counsel's performance.

Office claims that Mr. Williams had an actual conflict of interest based on his prior representation of Erika Office and Office in a child protective services (CPS) matter. (D.E. 1 at 7; D.E. 1-2 at 11–36.) Office argues that there was a conflict of interest between Mr. Williams's representation of both Office and Erika Office in the CPS case and Mr. Williams's representation of Office at the revocation hearing. (D.E. 1 at 9.) Office claims that Mr. Williams failed to adequately cross-examine Erika Office due to the conflict. (D.E. 1 at 10–11.) Office argues that Mr. Williams's services were, therefore, deficient under *Strickland.* (D.E. 1 at 7; D.E. 1-2 at 11–36.)[6] Office raised this claim in his state writ application (D.E. 23-21 at 41), and the state habeas court found no actual conflict of interest. (D.E. 23-24 at 51, ¶19.)

Claims of ineffective assistance of counsel based upon an attorney conflict of interest resulting from joint or serial representation of multiple clients is governed by *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Under the two-part

---

[6] Office also argues that Mr. Williams failed to obtain a waiver of conflict from him or notify the court, which Office claims was a violation of Texas Rules of Professional Conduct. (D.E. 1 at 7–10, 12.) A federal court reviewing a federal habeas corpus petition can only consider the violation of a petitioner's constitutional rights. *See* 28 U.S.C. § 2254; *Evans*, 790 F.2d at 1238 n.6 (5th Cir. 1986) ("[T]he alleged error must violate the federal constitution or federal laws in order for the writ to be granted."). A violation of the Texas ethics rules does not constitute an independent constitutional violation.

*Cuyler* standard, the defendant must (1) demonstrate that his lawyer had an actual conflict of interest, and (2) show that the conflict had an "adverse effect." *See Losada v. Johnson*, 95 F.3d 1149, 1996 WL 481358 (5th Cir. 1993) (Unpublished). Under the second prong, the petitioner must demonstrate that some plausible defense strategy or tactic might have been pursued but was not. *See Perillo v. Johnson*, 79 F.3d 441, 449 (5th Cir. 1996).

Here, the state habeas court found that Mr. Williams's prior representation of Erika Office was unrelated to the revocation hearing and caused no conflict. (D.E. 23-24 at 51, ¶19.) The state court found that Mr. Williams effectively cross-examined Erika Office. (D.E. 23-24, 6 at ¶32.) In his affidavit, Mr. Williams stated that he never represented Erika Office and Office at the same time in a *criminal* matter. (D.E. 23-23 at 9.) Mr. Williams also stated that Office voluntarily and repeatedly hired Mr. Williams the five times the state filed motions to adjudicate Office for assaulting Erika Office (D.E. 23-23 at 5–6)—fully knowing Mr. Williams's role in the CPS matter. (D.E. 23-23 at 9.) Lastly, Mr. Williams suggested that his prior representation of Erika Office actually constituted *advantage* to Office's case and assisted him in defending Office in the probation revocation hearing. (D.E. 23-23 at 9.)

This record suggests that the trial court's decision was based on a reasonable determination of the facts. Mr. Williams's representation of Erika Office had

concluded, and Mr. Williams's performance at the revocation hearing was not adversely affected by that prior representation. Office has not pointed to any plausible alternative defense strategy that Mr. Williams could have pursued on his behalf. The state court decision was contrary to, and did not involve an unreasonable application of, clearly established federal law. Therefore, Office cannot obtain habeas relief on this claim.

### 2. Trial counsel reasonably cross-examined Erika Office.

Office claims that Mr. Williams refused to cross-examine Erika Office about why the earlier of the two police reports did not mention a knife.[7] (D.E. 1 at 10; D.E. 1-2 at 20–23.) However, the state habeas court found that Mr. Williams effectively cross-examined Erika Office and called her credibility into question. (D.E. 23-24, 6 at ¶32.) The record supports that finding.

During cross-examination of Erika Office, Mr. Williams questioned the credibility of her narrative that Office held a knife in his hand while beating her. (D.E. 22-5 at 62–67.) Mr. Williams introduced into evidence that Erika Office had previously held Office at gunpoint (D.E. 22-5 at 91–92), and she "had an occasion

---

[7] The police reports that Office refers to were written after law enforcement interviewed Erika Office on two separate occasions. (D.E. 22-8 at 58–60.) At the probation revocation hearing, Mr. Williams unveiled that the earlier of the two police reports did not contain any mention of a knife; only the later of the two did. (D.E. 22-8 at 58–60, 70.) The second police report contained Erika Office's account that Office threatened her with a knife. (D.E. 22-8 at 58–60, 70.) At the hearing, Office contradicted her story by arguing that it was Erika Office who lunged at him with her knife, triggering him to act in self-defense. (D.E. 22-9 at 11, 28.) The two police reports were discussed at length, but the state trial court eventually refused to admit any evidence of the knife being used in the assault by either parties. (D.E. 22-9 at 79.)

to pull a knife on another individual." (D.E. 22-5 at 37.) Mr. Williams also suggested that Erika Office was jealous of Office's relationship with the female patrons at the bar that the couple operated (D.E. 22-5 at 40–45), and impeached her with a prior incident when she pulled a gun on Office. (D.E. 22-5 at 90–91.) Mr. Williams introduced into evidence Erika Office's text messages containing swear words directed at Office, which seemed to suggest that she did not actually feel threatened by Office. (D.E. 22-5 at 48–52.)

The trial court's decision finding that Mr. Williams rendered effective assistance to Office was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

### 3. Trial counsel conducted reasonable pre-trial investigation.

Office claims that Mr. Williams failed to conduct any pre-trial investigation about the aggravating or mitigating factors in his case. (D.E. 1 at 31–32; D.E. 1-3 at 18–23.) Office alleges that Mr. Williams should have done more to negate Erika Office's claim—that Office used a knife to assault her—and to bolster Office's claim—that he acted in self-defense when Erika Office lunged at him with the knife. (D.E. 1 at 31–32; D.E. 1-3 at 18–23.) According to Office, Mr. Williams

failed to file motions to discover the two police reports and never visited Office at the jail. (D.E. 1 at 31–32; D.E. 1-3 at 18–23.)

Office raised these claims in his state writ application (D.E. 23-21 at 40), and the state habeas court found Office's claim to be untrue. (D.E. 23-24 at 51, ¶ 15–16.) First, the state habeas court found that Mr. Williams visited with Office on numerous occasions at the Fort Bend County Jail. (D.E. 23-24 at ¶ 15.) This finding is consistent with the record. Mr. Williams stated in his affidavit that once Office was detained at the Fort Bend County Jail, Mr. Williams visited Office on numerous occasions to discuss the allegations against Office. (D.E.23-23 at 8.) Mr. Williams also stated that Attorney Roy Whitaker accompanied Mr. Williams to visit Office at the jail (D.E. 23-23 at 8), which Mr. Whitaker corroborated in an affidavit. (D.E. 23-23 at 45.)

Second, the state habeas court found that Mr. Williams conducted extensive discovery and was well-prepared for the probation revocation hearing. (D.E. 23-24 at ¶ 16.) This finding is also supported by the record. Mr. Williams stated in his affidavit that he reviewed both police reports with Office prior to the hearing. (D.E. 23-23 at 9.) The hearing transcript also showed that Mr. Williams successfully persuaded the court to exclude from evidence any use of a knife, which was the subject of the debate surrounding the two police reports. (D.E. 22-9 at 79.)

The trial court's decision was based on a reasonable determination of the facts. The state court decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

### 4. The decision not to file certain motions was part of trial strategy.

Office argues that Mr. Williams should have filed a motion for notice of the state's intent to use prior bad acts, a motion to suppress evidence of prior bad acts, and a motion for discovery of the police reports. (D.E. 1 at 31–32; D.E. 1-3 at 19.)

The Sixth Amendment does not require a defense counsel to file meritless motions. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). Here, Office fails to show the merit of the motions that he believes should have been filed. As this court held in Part B, the prosecution properly introduced Office's criminal history and other evidence Office asserts should have been excluded. In addition, the court did not consider the allegation that Office used a knife in assaulting Erika Office. (D.E. 22-9 at 79.) Finally, the record shows that Mr. Williams did address the discrepancy in the two police reports. (D.E. 22-8 at 58, 60.) Therefore, the motions would have been meritless, and Mr. Williams did not violate Office's Sixth Amendment right to effective assistance of counsel by not filing them.

### 5. The decision not to raise certain objections was part of trial strategy.

Office contends that Mr. Williams failed to object "each and every time objectionable evidence and testimony was offered." (D.E. 1 at 27–28.) Office claims that he was prejudiced due to Mr. Williams's failure to object: when Officer Hawkins testified that he perceived Erika Office to be in fear for her life when he found her; when the prosecution discussed Office's 2002 conviction in the opening statement; when Erika Office testified to the 2002 conviction; when Erika Office testified that she and Office had filed for bankruptcy; when Officer Hawkins testified that he knew Erika Office from the time Office threw hot grease on his son; when Office's probation officer testified about the hot-grease incident and Office's past DWI conviction; and finally, when the prosecution stated during closing argument that Erika Office became legally blind as a result of the 2008 assault. (D.E. 1 at 27–28.)

The state habeas court found that Mr. Williams's decision not to raise the objections was part of his trial strategy and that the objections would not have changed the outcome of the case. (D.E. 23-24, 51 at ¶ 21.) Mr. Williams's affidavit supported the state court findings. Mr. Williams stated that certain testimony Office challenges was harmless, and he later controverted some allegations as untrue. (D.E. 23-23 at 10–11.) For example, Mr. Williams stated that the testimony regarding the filing of bankruptcy was "totally irrelevant," yet he still addressed

the issue when he cross-examined Erika Office. (D.E. 23-23 at 11.) The transcript supports the affidavit: Mr. Williams questioned Erika Office about the bankruptcy filing and established that the couple, while separated, still took care of certain bills together on a monthly basis. (D.E. 22-5 at 53–55.)

Further, this court already determined that introduction of the hot grease incident, the DWI conviction, and the blindness of Erika Office was proper evidence at the punishment phase of the case. This, too, supports the trial court's conclusion that Mr. Williams's objections to these matters would not have changed the outcome of the case. (D.E. 23-24, 51 at ¶ 21.)

Viewed in light of the record, the trial court's decision was based on a reasonable determination of the facts in light of the evidence presented in the state court proceeding. The state court decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law. Moreover, the trial court found no prejudice or that the outcome of the trial would have been different but for Mr. Williams's decision not to raise the objections. (D.E. 23-24 at 51, ¶21.)

### 6. Consolidated punishment hearing did not violate Office's rights.

Office contends that Mr. Williams failed to raise his statutory right to a separate punishment hearing, precluding him from raising the issue on appeal. (D.E. 1 at 28; D.E. 1-3 at 13–14.) Office included this claim in his state writ application. (D.E. 23-21 at 39.) The state habeas court found that the trial court had

27

the opportunity to hear Office's "defense as well as other factors" and that Office "testified and never presented any mitigating factors which he conveyed to Mr. Williams to present to the Court." (23-24 at 50, ¶12.)

In a hearing to adjudicate guilt after a defendant waives trial by a jury and enters a guilty plea to a non-capital offense, "the proceedings become a unitary trial, 'that is the issue of guilt and punishment are submitted at the same time.'" *Lopez v. State*, 96 S.W.3d 406, 412 (Tex. App. 2002) (citing *Barfield v. State*, 63 S.W.3d 446, 449). A defendant is "accorded an opportunity to offer appropriate evidence in mitigation of punishment after the revocation of 'probation' and the adjudication of guilt and before the assessment of punishment *if such evidence has not already been elicited during the proceedings*, *particularly if the defendant requests the opportunity.*" *Duhart v. State*, 668 S.W.2d 384, 387 (Tex. Cr. App.1984) (emphasis added); *see also Hardeman v. State*, 1 S.W.3d 689, 690–91 (Tex. Cr. App. 1999) (declining relief when the appellant-defendant had opportunity to present mitigating evidence at the hearing to adjudicate guilt). Failure to secure a separate punishment hearing does not provide grounds for an ineffective assistance of counsel claim when the defendant had an adequate opportunity to present evidence of mitigation of punishment. *Lopez*, 96 S.W.3d at 417; *cf. Euler v. State* 158 S.W.3d 75, 77 ("*Duhart* requires only that a defendant have the opportunity to present evidence to mitigate punishment; it does not

require a separate punishment hearing after a defendant's community supervision is revoked.").

Here, Office had an adequate opportunity to present the mitigating factors. Mr. Williams argued that Office acted in self-defense and only used his hands, not a knife, to injure his wife. (D.E. 22-9 at 13–14, 69.) Office testified that he started quarrelling with Erika Office after he found out that she was in an extramarital relationship. (D.E. 22-9 at 8.) Mr. Williams had Office testify that Erika Office initiated the physical altercation by lunging at him with her knife. (D.E. 22-9 at 11.) Mr. Williams also argued that Office's hands should not be considered a deadly weapon. (D.E. 22-9 at 70.)

Based on the record, Office had an adequate opportunity to present mitigating factors to the court. Office was not prejudiced by not having a separate punishment hearing. *See Lopez*, 96 S.W.3d at 417. Therefore, this court finds that Mr. Williams's performance was satisfactory under *Strickland*.

### 7. The decision not to object to abuse of discretion was reasonable.

Office argues that Mr. Williams failed to preserve for appeal the state trial court's abuse of discretion in allowing the admission of improper evidence. (D.E. 1 at 27–28; D.E. 1-2 at 10–14.) Office raised this claim in his state writ application (D.E. 23-21 at 43), which repeats all of Office's allegations of ineffective assistance of counsel and prosecutorial misconduct. The state habeas court denied

this claim, (D.E. 23-24 at 53, ¶¶ 35–45), and concluded that "the failure to object to any matters complained of in Applicant's writ would not have changed this Court's decision to adjudicate or the sentence assessed." (D.E. 23-24 at 51, ¶ 21.)

Trial counsel's failure to object by itself does not constitute deficient representation where no sound basis exists for the objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (decision not to raise futile or meritless objection cannot be grounds for a finding of deficient performance); *see also Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness."). Therefore, a petitioner must show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *See Strickland*, 466 U.S. at 694. But on a habeas review, courts presume that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Further, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (stating that a failure to object may be a matter of trial strategy as to which courts will not second guess counsel).

As more fully discussed in the next section, the trial court did not abuse its discretion in adjudicating Office's guilt. As a result, Mr. Williams's failure to

object on the basis of the trial courts abuse of discretion was not deficient performance, and the objection would have made no difference to the case.

### D. Trial Court Abuse of Discretion

Office argues that the trial court abused its discretion by (1) exhibiting bias; (2) admitting irrelevant, inadmissible, and prejudicial extraneous evidence; (3) adjudicating guilt on insufficient and perjured evidence; and (4) ignoring the prosecutorial misconduct and ineffective assistance of counsel at the probation revocation hearing. (D.E. 1 at 18–19; D.E. 1-2 at 18–31; D.E. 1-3 at 1–3.)

### 1.  Trial court did not exhibit bias.

First, Office argues that the trial judge was so predisposed toward the finding of guilt that the judge violated Office's due process rights. (D.E. 1 at 18; D.E. 1-2 at 18.) Office points to three things in the hearing transcript to support his contention that the judge exhibited bias: First, the judge's statement that "the Court can take anything into consideration since it's to the bench" after Office's objection to the prosecution's opening statement; second, the judge's remark—"we all know he is guilty of that"—in overruling Office's objection to the discussion of Office's 2008 conviction; and third, the judge's *sua sponte* examination, during the hearing, of a case file containing Office's criminal history. (D.E. 1 at 19; D.E. 1-2 at 20, 24.)

In a revocation hearing, a probationer must be provided a neutral and detached hearing body. *Scarpelli*, 411 U.S. at 786 (1973). To prevail on a claim of presumptive bias, a petitioner must "establish a genuine question exists concerning [the judge's] impartiality." *Bixby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005). Under AEDPA, the question is not whether a federal court believes that the state court's determination was incorrect "but whether that determination was unreasonable—a substantially higher threshold." *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As discussed above in Part B, Mr. Office's criminal record was relevant, so the court's consideration of it does not show bias. The court's recognition that Mr. Office already pleaded guilty in 2008 certainly does not show bias. Therefore, the trial court did not deprive Office of his right to a neutral and detached hearing body.

### 2. The trial court properly admitted and considered evidence.

Office claims that the trial court violated Texas Rules of Evidence in admitting the DWI conviction, the alleged assault on his son, and the fact that the couple filed for bankruptcy. (D.E. 1 at 18; D.E. 1-2 at 17–18.) As discussed above in part B, the DWI conviction and the assault on Office's son were admissible in the context in which the prosecution introduced them. Therefore, the trial court did

not abuse its discretion in letting the DWI conviction and the assault into the record.

As to the bankruptcy, Office has failed to assert the violation of any constitutional right. Office merely alleges that the trial court violated the Texas Rules of Evidence by allowing Erika Office to testify about the bankruptcy. (D.E. 1 at 18.) This court may only review a claim of constitutional violation. *See Darden*, 477 U.S. at 181; *Cook*, 783 F.2d at 596 (5th Cir. 1986) ("The federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding."). Introduction of evidence that is potentially inadmissible under state law, without more, is not sufficient to warrant habeas relief under AEDPA. *See Estelle v. McGuire*, 502 U.S. 62, 67–69 (holding that the § 2254 habeas petitioner failed to show that the admission of his prior bad act violated his due process rights, even though the Court of Appeals of the Ninth Circuit found that it violated California law).

### 3. The trial court adjudicated guilt on sufficient evidence.

Office argues that the court revoked his probation based on insufficient evidence and perjured testimony of Erika Office. (D.E. 1 at 19; D.E. 1-2 at 21.)

In Texas, "an order revoking probation must be supported by a preponderance of the evidence." *Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). And in a probation revocation hearing, the trial court is the

33

"sole trier of the facts, the credibility of the witnesses and the weight to be given to the testimony." *Battle v. State*, 571 S.W.2d 20, 21 (Tex. Crim. App. 1978). The decision to adjudicate guilt comports with the Due Process Clause unless the decision is "totally devoid of evidentiary support." *Sandoval v. Dir., TDCJ-CID*, No. CIV. A. 6:07CV512, 2008 WL 4365919, at *9 (E.D. Tex. Sept. 19, 2008).

The trial record shows that Erika Office's testimony sufficiently supported the trial court's adjudication of Office's guilt. Erika Office testified to the circumstances leading up to the assault. (D.E. 22-4 at 55–59, 74.) She testified that Office pretended to take her out for lunch but took her to a mutual friend's vacant home and assaulted her for five or six hours. (D.E. 22-4 at 74–87, 89–95.) Photographs of Erika Office after the beating were submitted into evidence. (D.E. 22-5 at 6–9.) The text messages that Office sent to Erika Office, apologizing and asking her not to involve the police, were admitted into evidence along with copies of an emergency protective order, bail bond, and court orders of no contact. (D.E.22-5 at 12–18.) After considering all evidence and weighing the credibility of the witnesses, the trial court concluded that a preponderance of the evidence supported the finding of guilt. (D.E. 22-9 at 78–79.)

Viewed in light of this record, the trial court, as the sole trier of fact, properly considered Erika Office's testimony in finding Office guilty of assaulting her. The record does not show that the court's decision was totally devoid of

evidentiary support. Therefore, this court concludes that the trial court did not abuse its discretion.

### 4. **The court did not overlook error by the prosecutor or trial counsel.**

The rest of Office's claims about the trial court's abuse of discretion are redundant. Office repeats as abuse of discretion what he already alleged as prosecutorial misconduct and ineffective assistance of counsel. Because there was no misconduct, and because Mr. Williams provided adequate representation, any claim about the trial court's failure to correct the lawyer's conduct is without merit.

### E. Ineffective Assistance of Counsel—Appellate Counsel

Office claims that his appellate counsel, Ms. Jernigan, provided ineffective assistance of counsel. He bases his claim on two grounds: First, Office claims that Ms. Jernigan failed to raise the prosecutorial misconduct claim on appeal (D.E. 1 at 13; D.E. 1-1 at 36–37; D.E. 1-2 at 1–9); Second, Office claims that Ms. Jernigan failed to raise Mr. Williams's ineffective assistance of counsel on appeal. (D.E. 1 at 25; D.E. 1-3 at 3–10.) Again, Office incorporates his previously stated allegations and recasts them as a claim of ineffective assistance of counsel on appeal.

Performance of appellate counsel is evaluated under the *Strickland* test. *Smith v. Robbins*, 528 U.S. 259, 286 (2000). Under *Strickland*, there is a "strong presumption" that the counsel operated with sound strategy, and once so presumed,

strategic choices are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. An

appellate counsel does not have a constitutional duty to raise every non-frivolous

issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 754 (1983); *see

also Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973) (appellate counsel can

choose not to raise a meritless claim on appeal).

Office's claims of prosecutorial misconduct and ineffective assistance of

trial counsel are meritless, as discussed above in Parts B and C. Ms. Jernigan, in

her affidavit, stated that she concluded Mr. Williams rendered competent counsel:

> My review of the reporter's record revealed that trial counsel objected
> to the admissibility of evidence, forced the complainant to make
> admissions on cross-examination which called her credibility into
> question, effectively cross-examined an alleged co-defendant, and
> obtained a dismissal in a related case for the offense of solicitation of
> murder. . . . Mr. Office's complaint that his trial counsel had a conflict
> of interest in representing him was not apparent from the record, and
> therefore, could not be raised on direct appeal. *Bone*, 77 S.W.3d at
> 833. Moreover, Mr. Office presumably waived any conflict because
> his trial counsel was retained, not appointed.

(D.E.23-22 at 9.) Ms. Jernigan also noted that she provided her best efforts:

> Finally, I met with Mr. Office at the Fort Bend County Jail,
> thoroughly reviewed the trial transcript, the clerk's record, and the
> voluminous correspondence from Mr. Office and his mother Mary
> Ann Young. I corresponded with Ms. Young as a courtesy on many
> occasions. After reviewing all of the relevant information and records
> in this case, I brought forth the only point of error I could raise in
> good faith, as I am required to do.

(D.E.23-22 at 9.)

The state habeas court found that Ms. Jernigan was prepared, investigated and corresponded with Office and his mother, reviewed all relevant information and record, and raised on appeal the only point of error that she could raise in good faith. (D.E. 23-24 at 53, ¶ 34.) It found that Ms. Jernigan had a sound defensive strategy. (D.E. 23-24 at 53, ¶ 38.) Finally, it concluded that Office failed to show that Ms. Jernigan rendered ineffective assistance of counsel. (D.E. 23-24 at 54, ¶¶ 39–45.)

Based on the record, Ms. Jernigan rendered competent services when she chose not to raise frivolous or meritless claims on appeal. *See Hooks*, 480 F.2d at 1198; *see also Barnes*, 463 U.S. at 754. This suggests that the trial court's finding was based on a reasonable determination of the facts. Office thus fails to overcome the presumption that Ms. Jernigan's decision not to appeal on the grounds of prosecutorial misconduct and ineffective assistance of counsel was within a sound defense strategy. *See Strickland*, 466 U.S. at 690. And Office points to no legal authority to suggest that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law.

### F. Constitutionality of State Court of Appeals Opinion

Office argues that the state appellate court's analysis of the trial court abuse of discretion claim was contrary to Supreme Court precedent. (D.E. 1 at 30; D.E. 1-3 at 16–18.) In particular, Office claims that the appellate court's harmless-error

analysis constituted a violation of the Texas Rules of Evidence. (D.E. 1-3 at 16–17.)

Federal courts reviewing a habeas petition do not exercise supervisory power over state court decisions. *See Darden*, 477 U.S. at 181; *Cook*, 783 F.2d at 596 (5th Cir. 1986) ("The federal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding."). And a federal court's review is limited to the violation of a petitioner's constitutional rights. *See* 28 U.S.C. § 2254; *Evans*, 790 F.2d at 1238 n.6 (5th Cir. 1986). "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

There was no constitutional problem with the state appellate court's invocation of the well-known harmless error standard.

### G. Cumulative Effect

Office argues that the cumulative effect of all of the alleged grounds for his habeas petition deprived him of a fair trial. (D.E. 1 at 20–24; D.E. 1-2 at 23–31; D.E. 1-3 at 1–3). In doing so, Office again incorporates all of his prior claims to recast them as a cumulative effect claim. (*Id.*)

The cumulative error doctrine provides that "an aggregation of non-reversible errors can yield a denial of the constitutional right to a fair trial, which calls for a reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998).

But where a petitioner "has not established any error[,] there is nothing to cumulate." *United States v. McIntosh*, 280 F.3d 479, 484 (5th Cir. 2002).

This court has already decided that each of Office's federal habeas claims fails. This court's review of the entire record also shows that Office was not deprived of any constitutional rights. Therefore, this court rejects Office's claim. *See McIntosh*, 280 F.3d at 484 (5th Cir. 2002).

## IV.   Conclusion

For these reasons, this court recommends that Davis's motion be granted and Office's petition and motions be denied with prejudice. All remaining motions should be terminated as moot. Office has not met his threshold burden of demonstrating that the state habeas court's denial of these claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. Similarly, Office has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, this court recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have 14 days from service of this memorandum and recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain

error. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72.

Signed at Houston, Texas, on September ___7___, 2018.

_____

Peter Bray

United States Magistrate Judge